Good morning, Your Honors. Eric Grant, representing Appellant R.R. Street & Co. I'll be doing all the talking this morning for the appellant's side, unless the Court has a specific question for my colleagues at National Union Fire Insurance. I'd like to reserve four minutes for rebuttal. This is a classic federal case. A federal case involving state law. Yes, Your Honor. Everything, all the issues will be decided according to state law. Am I right or wrong? You're right, Your Honor. Okay. This is a classic diversity case. Right. Large entities from completely different states with a controversy in the millions of dollars. Congress has expressly conferred diversity jurisdiction on the district courts to resolve exactly these kinds of cases. And, in fact, there's been no question here in either the original action brought by Street & National Union or the reactive action brought by Transport that there is not unquestionably diversity jurisdiction. There's been no question about venue. But that doesn't answer the final question. It doesn't, Your Honor. But it gets us to Colorado River itself. Exactly. And what both the Supreme Court, beginning in Colorado River itself, and especially in Moses H. Cone Memorial Hospital, and then this court more recently in a case, among others, Smith v. Central Arizona Water Conservation District, has said is there must be exceptional circumstances. Right. There must be the clearest of justifications to abstain on Colorado River grounds. Let's say if we keep this case somehow in federal court. It's going to continue also in state court at the same time. Is that right? No, Your Honor. Because the federal case will stop the state court cases from proceeding? The one case that's in state court that has the parties and the issues is the removed case brought by Transport that was properly removed five days after it was filed to the district court. It was consolidated in front of the same district judge. Removal, either jurisdiction or the mechanics of removal, the propriety of removal was never challenged by Transport. And so in the one order under review, the district court remanded that case. And central to this appeal is our contention that that remand was improper and abuse of discretion. So if this court does, as street and national union ask it to do, to reverse the district court, that case will come back to federal court. And we've suggested that Transport action as the second filed case, as the reactive case, be stayed. But if it's consolidated with our case, that's fine. So if the Colorado exceptions work, however, though, then it's all right. Well, I guess I'm uncertain as to the question, Your Honor. Well, why don't you talk about the Colorado River exceptions, then that seems to be where you were going. Certainly. Certainly. So what we need, what the district court needs to abstain on Colorado River grounds is those exceptional circumstances. And one bedrock requirement is the requirement of a parallel state action. And this court in Holder v. Holder, among other cases, has said there must be an identity, not necessarily an identity, but there must be a forum to resolve all of the claims among all of the federal parties. This is Judge Reimer. If you're looking for me, I'm in the ceiling. Let me ask you a question on that. If the removed action stays in state court, then there is, in effect, a parallel action. And it has been related to the Maine Vulcan litigation. Your Honor, we would concede that, apart from the improprieties of remand, that the transport action, the removed action, could serve as parallel litigation because the parties are, in fact, identical. We've all agreed that the removed action is a mirror image of the original action. But our point is the removed action is a justification for Colorado River abstention only because the district court self-consciously created that parallel state action by remanding the case. It was properly removed. And we believe we've explained why it was improperly remanded under this court's precedence. And it really, I think, is an example of a district court that's looking for reasons not to exercise diversity jurisdiction. But that's the exact opposite of what the Supreme Court and this court  A district court is supposed to find these exceptional circumstances, these clearest of justifications for surrendering its congressionally conferred jurisdiction. Do we review that de novo or for an abuse of discretion, the finding of extraordinary circumstances? It's reviewed de novo, Your Honor. And that is the Smith case at 418F3rd at 1032. The requirements for Colorado River abstention are reviewed de novo. So what we have here is both at the time the original action was filed in August of 2009, there was no state court action. There was no second action. It was not yet in existence. At the time, transport's motion to dismiss on Colorado River grounds was filed in November of 2009. That case was properly in federal court as having been properly removed. Jurisdiction was unquestioned. Venue was unquestioned. The propriety of removal was unquestioned. So the only way that the case was back in state court was the district judge's remand. And it appears that the only reason for the remand was to find a reason to abstain under Colorado River. And again, under the law, that's exactly backward. The court should have looked for reasons to exercise its congressionally conferred jurisdiction rather than surrender it. And so your argument is because there was no parallel action at the time, Colorado River exceptions can't possibly work. Exactly, Your Honor. It's a requirement. The Holder case, the Smith case, and others say that expressly. Now, going to the removed action and the propriety of removal, what this court has said in a number of cases, including continental casualty that we've cited in our briefs, the Geico versus Daisal case where this court went en banc to address these precise issues, these kinds of reactive actions filed by insurers against insured-like street, trying to preempt a substantive action, a breach of contract action, this court has said those reactive actions need to take a back seat. It's the original action, the first filed action by the insured, that should have primary resolution. And so what this court has said is that those reactive actions need to take a back seat. Here, what we asked the district court to do was to stay that removed action or even consolidate it with the original action. Either way would have been fine. And so what this court said en banc in the Daisal case was, if you have a properly filed federal action with claims for money damages, like breach of contract, exactly what street's action is here, those declaratory judgment actions should not be remanded. And the site for that is 133F3rd at 1225. So again, whether we look at it from the perspective of Colorado River or whether we look at it from the perspective of the removed action and the Declaratory Judgment Act, what the district court did here was to not adhere to the standards laid down by the Supreme Court or by this court for properly resolving a classic diversity case. And I think as we cited on pages 37 and 38 of our opening brief, the Chamberlain v. Allstate insurance case, particularly at 931F2nd at 1368, is a good example of this kind of litigation. In that case, as in the present one, there were multiple actions going on. There was an original action with breach of contract claims like streets. There was a declaratory judgment action like transports. And what the district judge did there and what this court expressly affirmed was that it was proper to retain the entire controversy in federal court and have it resolved under the diversity jurisdiction. So that's all we ask is that the district court here exercises congressionally conferred jurisdiction. It should not have looked for an excuse to get rid of that. The removed action was not a candidate for parallel proceedings. And I think by this time in the litigation, Transport has conceded that this Vulcan consolidated action was not a proper candidate either. It wasn't at the time. Street was not even a party to that action. And now essentially that Vulcan consolidated action is over. Any aspect of the action that involved the insurance policy at issue here has been settled. That occurred formally. That's after the Court of Appeal ruled? Well, after the Court of Appeal ruled and then there have been express dismissals of the respective claims between Vulcan and Transport. We submitted a joint stipulation to this court to include that in the record and ask this court to take judicial notice. So I see I'm at four minutes. I'd like to reserve the balance of my time. That's fine. Thank you, Counsel. Good morning, Your Honor. Ray Wong and with me Cindy Chang and Chris Yeh on behalf of Transport Insurance Company. Your Honor, what I just heard is somewhat surprising in that there is a whole history that was not discussed by counsel. And I think that is very important with regard to the issue of the parallel action. This case in essence is the definition of forum shopping by the appellants. And let me explain why that is. As the court is undoubtedly aware, the Vulcan coverage litigation began in January of 2005. And what happened from 2005 up to approximately, Your Honors, in 2008 and 2009 was basically litigation that involved the interpretation of a policy that became one of the central disputes in the Vulcan litigation, namely the 1981 transport policy. And so there was briefings, there were hearings, there were decisions that were made with regard to the 1981 transport policy. And indeed, appellants participated in those proceedings. And as Your Honor correctly pointed out, these were all state court claims focused with regard to the insurance policies at issue, particularly focused on this 1981 policy. So after discovery occurs and after briefing occurs and after a hearing occurs and indeed after a decision is made by the trial judge, Judge West, with regard to the 1981 policy, a decision was rendered by Judge West which was favorable to transport and not favorable to the other side, presumably including the interests of the appellants. And so it's after that decision is rendered by Judge West that there is a maneuvering that occurs in which the claims that were pending at that time between Vulcan and the appellants were somehow stayed to the surprise, mind you, of Judge West that we then have this federal action, this file, that raises, again, state law claims in federal court focused on the 1981 policy. So it's a decision that was calculated because they didn't like the decision that was made by Judge West in the state court action, then they do an end run and file this new lawsuit in federal court. And the court is undoubtedly aware, because it's been included in the record, with regard to the reaction by Judge West when he learns about this decision, about this separate action that's been made. And I'm not going to belabor the record by all of the comments that have been made by Judge West, but that it is I think one comment that he makes in particular, Your Honors, I think is very telling in terms of his reaction, which was at the supplemental excerpt of the record of page 64 where Judge West says, I am, find it somewhat frustrating that I have parties before me, they stipulate the state proceedings for a number of reasons, and then they make a deal, they get dismissed and go file the same lawsuit in another court. But this doesn't make sense. We've been working at this for three or four years with I think some modicum of success, and maybe not measurable or readily really identifiable, but we've done some stuff, and we're going to keep doing it. So all right. I could go on with a number of reactions from Judge West, but the point of the matter is that since 2005, there's been a state court proceeding that has been dealing with these state law claims, particularly focused on the 1981 policy. Contrary to the argument that you just heard from counsel, that litigation continues. And even though there's been... What does that mean, that litigation continues? The bulk and coverage litigation, Your Honor, continues. Indeed, we were all, all counsel, including appellant counsel, were before Judge West at a case management conference just last week. And so the litigation is hardly over. There are certain underlying claims that indeed have been settled. But the litigation continues. And to the extent that there are other claims at issue, there will be litigation in the state court specifically focused on the 1981 policy with regard to other underlying claims. And will those have, when decided, have preclusive effect on anything that happens in federal court, should there be something still going in federal court? I believe so, Your Honor. And that's exactly why I think that the district court properly ruled in favor of two issues. Number one, dismissing this federal action that the appellants filed, even though they had been actively litigating in the state court proceeding. And secondly, remanding the removed action that we had filed. So let me make sure that I address the issue of parallel actions, Your Honor. Excuse me, is street a party to the Vulcan litigation now? I'm sorry, I couldn't hear that, Your Honor. Is street a party to the Vulcan litigation now? It is a party to the street litigation now, Your Honor. Let me explain why, and that's one of the parallel actions I wanted to bring the court up to speed. First of all, Your Honor, I've talked about the Vulcan litigation that's been going on since 2005. We, as a suggestion of Judge West, filed a separate action directly against street and National Union with regard to the claims that have been raised. That was removed. That's now been remanded back. That's part of the same litigation, so they are a party in that action. Moreover, Your Honor, and this is the subject of our motion to dismiss that we filed about a month or so ago, and that is that in that litigation, in the street litigation, the appellants filed a cross-claim against transport. So they elected, and they were given leave to file a cross-claim, which they did, and so they now have a cross-complaint, which is not only a mirror image of the federal complaint that they filed, but is indeed, Your Honors, broader in terms of the relief that they're seeking than in the federal complaint. So they have chosen to file a cross-complaint in the state lawsuit, bringing claims not only involved in the federal case, but also a claim for bad faith, as well as claims related to three other additional underlying locations or sites at issue. Broader relief than what was even pled in the complaint. We believe, and so Your Honor, hopefully I have responded to your question, that yes, Street is definitely a party, and indeed National Union is indeed still a party, in the Vulcan-slash-Street-slash-National Union coverage litigation. And so if you look at the Colorado River factors, all of those factors are met, as the district court found. Given the scenario that they're arguing to the court, what they would ask, I suppose, is that you would have the same claims being addressed in state court, and you would have the same claims under the policies being addressed in federal court. If that's not piecemeal litigation, I don't know what is. In addition, I've already talked about the issue of forum shopping, blatant forum shopping here, in terms of trying to do this end run. The gravamen of the Colorado River is that of wise judicial administration, and it certainly makes sense, as Judge West found, and as Judge Snyder found in the federal court, in her decision, is that it makes sense for all of these state claims to be addressed in one court, the court that has been handling this since 2005, and that it does not make sense to try to split these up and to do this piecemeal. Now, with regard to the motion to dismiss that we filed, as to the removed action that counsel was referring to, the standard that the district court applied with regard to deciding to remand that action is under the Wilton-Brilhart standard, which is an abuse of discretion standard. That's discretionary. Right. And the court exercised sound discretion in recognizing that those state law claims properly belong with the rest of the state claims before Judge West, and remanded that case back to Judge West. So you do have the standards under Brilhart, Wilton-Brilhart, in which the court properly decided that given the considerations of sound judicial administration, that those claims should be remanded back. So, Your Honors, we believe that now that appellants have decided to file, voluntarily filed this cross-complaint, that they have essentially deprived this court of affecting any effective relief with regard to their appeal. So we would ask that, pursuant to the motion that we filed, that the appeal with regard to the remand order essentially be dismissed, because this court no longer can effect any relief with regard to the remand order. Why? Because they have chosen to file this cross-complaint, and by doing so, they are in essence acting as a plaintiff in the form of a cross-complaint in a state court, and they now, you can no longer basically order that action to be re-removed, if you will,  The bottom line, Your Honors, these are state law claims that have been addressed for a long time before Judge West. It properly belongs in the state court. That's essentially what Judge Snyder found, and she should be affirmed. The last point, Your Honor, that I wanted to mention is that, given the decision that was made by Judge West, that in my mind is what basically triggered the appellants to try to do this and run into federal court, that's where Judge Snyder ruled, we believe correctly, that what, in essence, what the appellants were trying to maneuver here was for a federal judge to take another look at the decision that had been made by Judge West with regard to the interpretation of the 1981 policy, and she felt, under a Rooker-Feldman, that that was something that was improper for a federal judge to take another review. I'm not so thrilled with the Rooker-Feldman argument. I don't know about my colleagues, but... Your Honor, it was not something that we had raised, but I'm just pointing out the context of what I believe why Judge Snyder raised that point, because the way that this was presented to her was that Judge West had made a decision under the 1981 policy, that occurred in April of 2009, and it's because the appellants didn't like that decision that they filed this action, in essence, trying to get another opportunity for a different judge, Judge Snyder, presumably, to have taken a look at this, and that's why I think she responded that, look, I can't do that. You're basically asking a federal judge to basically review a decision that's been made by a state district court judge or a superior court judge, and that's not something that I am authorized to do, and that was something that she raised, so I just wanted to bring out my understanding of the motivation why that was raised. These are state law claims. They're being litigated, continue to be litigated. Appellants appreciate that because they're the ones that have filed voluntarily another cross-complaint, bringing their state law claims, broader state law claims, in the same proceedings being handled by Judge West. I will lastly point out that, of course, Judge West is one of the complex judges in Los Angeles Superior Court. The complex court, as this court is undoubtedly aware, has been specially designed to handle complex litigation. Given the number of parties, the number of claims, the number of issues, it is more than adequately equipped to handle, as it has been handling all of the myriad of state law coverage issues raised by all of the claims that have been made, including the claims most recently made by appellants cross-complaint. Was Roger West formerly an assistant United States attorney? Carl West, Your Honor. Carl West. Oh, it's not Roger West. Okay. Your Honor, I believe so, but I can't support it. No. So, Your Honor, we believe that the decision should be affirmed and that the litigation should continue to be pursued in the state court. Thank you, Counsel. Thank you, Your Honor. I agree with one thing that Mr. Wong said, and that is that this dispute should be resolved in one court, and that's exactly what happened in the Chamberlain case, and that's what we submit should happen here. Well, please address the argument that by filing this cross-complaint, which is a mirror image plus, that you have become a plaintiff in this case, and so the case isn't even subject to removal anymore. Yes, Your Honor. We filed a brief. It's docket number 45 in this court, explaining why that is a compulsory cross-complaint under California law, and so we essentially did not have a choice about filing that because if we did not assert those claims, they could potentially be lost under principles of preclusion. Again, it's docket number 45 for the end of that pleading that explains that at length, and since we filed that, I found one of this court's cases that I think illustrates the conundrum, and that's Noel v. Hall, 341F3rd at 1169.70. This is a new case that you're citing for the first time? This is in response to the reply brief, the very last pleading in this case, yes. So this is the first time we're hearing about this case? Yes, Your Honor. Have you told the other side you're going to be relying on this case in argument? I have not. But I would just say that that case illustrates the problem that litigants in our position, the problem we face with these compulsory cross-complaint statutes, and I think if you look particularly at the transcript of the February 24th hearing that Transport has submitted to this court, and that's document 39-3, particularly beginning at page 8, you'll see that the impetus for the cross-complaint is not from us. It's from Judge West, and that's his prerogative. That's fine. And so he basically told us one way or another there needed to be a cross-complaint, and he would either take our federal complaint and deem it a cross-complaint in state court, or he would give us leave to file under California's compulsory cross-complaint statute to file an independent document, and we, of course, chose the latter. Why don't you want to be in state court? I mean, I understand all this jurisdictional stuff, but what's really going on here? Your Honor, I think we're clients that are nationally based. We're familiar with both the client and counsel are more familiar with federal court. You've been in state court with Judge West forever on this case. No, Your Honor, and I'd like to address that point, and this is very important, that there's been a lot of charges of foreign shopping, and the record is clear that the claims between these parties in the federal litigation, in the two complaints, were never, never, never a part of that state court litigation. In fact, the very first time they were ever asserted between these parties was when Street and National Union filed their original complaint in August of 2009 in the Central District. So to say that the litigation continues in state court is only true in the most trivial sense. What continues is the remanded case, of course. We've challenged that remand. We think that remanded case ought to go back into federal court and be litigated along with the original action. Because you're more comfortable with federal court. We are, Your Honor, and these are clients that litigate nationally, are looking to establish national precedent, and so Congress gave us that right, and numerous cases of this court have affirmed that when litigants have that right, only exceptional circumstances, only in extremely rare occasions, should that be taken away under Colorado River. So we ask this court to reverse the judgment of the district court. Thank you. Thank you to both sides. Case well argued. The case will be ordered and submitted. And in the vernacular, unless Judge Reimer has anything to add, we are through for the day. Thank you.
judges: Beezer, Trott, Rymer